## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **STATE OF OKLAHOMA,** *ex rel.* | ) | |
| **W.A. Drew Edmondson, Attorney** | ) | |
| **General of Oklahoma;** | ) | |
| **OKLAHOMA TAX COMMISSION,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **No.  09-CV-124-TCK-TLW** |
| | ) | |
| | ) | |
| **COLETA LARKIN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION AND ORDER

Before the Court is the State of Oklahoma *ex rel.* W.A. Drew Edmondson, Attorney General of Oklahoma, and the Oklahoma Tax Commission's Motion to Remand (Doc. 26) ("Motion to Remand").  For reasons explained below, the Motion to Remand is granted.

**I.      Relevant State and Federal Laws**

Before discussing the allegations in Plaintiffs' First Amended Petition ("FAP"), it is necessary to explain three laws referenced in the FAP: (1) an article of the Oklahoma Tax Code governing taxes levied on the sale of cigarettes at tribally owned or licensed stores, Okla. Stat. tit. 68, §§ 346-352 ("State Cigarette Tax Act"); (2) the Master Settlement Agreement Complementary Act, Okla. Stat. tit. 68, §§ 360.1-360.9 ("State Complementary Act"), which is also contained in the Oklahoma Tax Code; and (3) the Contraband Cigarette Trafficking Act, 18 U.S.C. §§ 2341- 2346 ("CCTA").[1]

---

[1]  For ease of reference, the Court has employed the short names used by Plaintiffs in the FAP.

A.      State Cigarette Tax Act

Article 3B of the Oklahoma Tax Code is entitled "Sale of Cigarettes at Tribally Owned or Licensed Store."  *See* Okla. Stat. tit. 68, §§ 346-352.  In passing this article, the Oklahoma Legislature made specific findings that: (1) Indian tribes and nations may sell cigarettes and tobacco products to their members free of state taxation; (2) the State cannot bring a lawsuit "against an Indian tribe or nation to compel the tribe or nation to collect state taxes on sales in Indian country to either members or nonmembers of the tribe or nation without a waiver of immunity"; and (3) the United States Supreme Court, in *Oklahoma Tax Commission v. Citizen Band Pottawatomie Indian Tribe of Oklahoma*, 498 U.S. 505 (1991), "suggested that a state may provide other methods of collection of state taxes on sales of cigarettes and tobacco products made by Indian tribes or nations to persons who are not members of the tribe or nation, such as entering into mutually satisfactory agreements with Indian tribes or nations."  *Id.* § 346(A)(1)-(3).  The Oklahoma Legislature then stated its intent

> to establish a system of state taxation of sales of cigarettes and tobacco products made by federally recognized Indian tribes or nations or their licensees, *other than such tribes or nations which have entered into a compact with the State of Oklahoma pursuant to the provisions of subsection C of this section*, under which the rate of payments in lieu of state taxes is less than the rate of state taxes on other sales of cigarettes and tobacco products in order to allow such tribes or nations or their licensees to make sales of cigarettes and tobacco products to tribal members free of state taxation.

*Id.* § 346(B) (emphasis added).  Subsection C of § 346 authorizes the Governor of Oklahoma to "enter into cigarette and tobacco products tax compacts on behalf of the State of Oklahoma with the federally recognized Indian tribes or nations of this state," which "set forth the terms of agreement between the sovereign parties regulating sale of cigarettes and tobacco products by the tribes or nations or their licensees in Indian country."  *Id.* § 346(C).  Thus, the statutory scheme divides

2

Indian tribes or nations into two categories: those that enter into a compact with the State ("compacting nations") and those that do not ("non-compacting nations").

Compacting nations are required to make a "payment in lieu of state sales and excise taxes" to the State in the amount set forth in the compact "upon purchase of all cigarettes and tobacco products intended for resale in Indian country." *Id.* § 346(C)(1); *see also* FAP ¶ 7 (alleging that compacting nations pay a "reduced State cigarette excise tax" in a "negotiated" amount set forth in each cigarette tax compact). In addition, "[a]ll cigarettes and tobacco products sold or held for sale to the public [by compacting nations], without distinction between member and nonmember sales, shall bear a payment in lieu of tax stamp evidencing that payment in lieu of state taxes has been paid to the state." Okla. Stat. tit. 68, § 346(C)(2).

At the time the FAP was filed, non-compacting nations were required to pay "seventy-five percent (75%) of the cigarette excise taxes imposed [in § 301 of the Oklahoma Tax Code]." *Id.* § 349(A) (repealed effective Jan. 1, 2010);[2] *see also* FAP ¶ 8 (alleging that the reduced State cigarette excise tax rate is 75% of the "regular cigarette tax imposed on cigarette sales"). At relevant times, this rate was 77.25 cents/packages of twenty cigarettes. *See* Okla. Admin. Code 710:70-7-8(a), (b)(1). A non-compacting nation was eligible for a quarterly refund for a portion of the tax imposed if it could show that sales to its own members exceeded twenty-five percent of its total sales. *Id.* § 349(B). All cigarettes "sold or held for sale at a tribally owned or licensed store" by a non-

---

[2] Effective January 1, 2010, the Oklahoma Legislature repealed § 349 and replaced it with § 349.1, which creates a new tax scheme. There is litigation pending in this district related to the State's enforcement of the new law. (*See* 3/18/10 Order, Doc. 63, *Muscogee (Creek) Nation v. Brad Henry, et al.*, 10-CV-19-JHP (N.D. Okla.) (denying preliminary injunctive relief sought by MCN to prohibit State from enforcing new law within Indian country).) In this case, Plaintiffs have alleged a conspiracy to violate the former law.

3

compacting nation were required to "have affixed thereto a stamp or stamps evidencing payment of the in lieu tax required by [§ 349(A)]." *Id.* § 349(C).

Packages of cigarettes that do not contain the tax stamp required by Oklahoma law or that bear an improper tax stamp are "unstamped cigarettes." *See id.* § 348(6).[3] "Unstamped cigarettes" that are in the "possession, custody, or control of a person, for the purpose of being consumed, sold offered for sale or consumption or transported" to a person in Oklahoma other than a licensed wholesaler are "contraband cigarettes." *See id.* § 348(7).[4] Pursuant to § 349, a person who ships, transports, receives, sells, distributes, or purchases "contraband" cigarettes was subject to forfeiture of the property, assessment of penalty, and assessment for any delinquent taxes. *Id.* § 349(E).[5]

---

[3] The statute provides:

> "Unstamped cigarettes" means packages of cigarettes which bear no evidence of the tax stamp required by state law and includes cigarettes bearing an improper tax stamp applicable to the retail establishment at which the cigarette is sold, regardless of the identity of the establishment which the cigarette has been sold, shipped, consigned or delivered[.]

*Id.*

[4] The statue provides:

> "Contraband cigarettes" means unstamped cigarettes which are required by the provisions of Sections 348 through 351 of this title or Section 301 et seq. of this title to bear stamps and which are in the possession, custody or control of any person, for the purpose of being consumed, sold, offered for sale or consumption or transported to any person in this state other than a wholesaler licensed under Section 304 of this title; provided, contraband cigarettes shall not include unstamped cigarettes sold to veterans' hospitals, to state-operated domiciliary homes for veterans or to the United States for sale or distribution by said entities in accordance with Sections 321 through 324 of this title[.]

*Id.*

[5] The relevant penalty provision of the statute remains unchanged in the 2010 amendment. *See id.* § 349.1(H).

Pursuant to § 350, every wholesaler selling to tribally owned or licensed stores must "affix the tax stamp required by . . . this act to cigarette inventory sold to a tribally owned or licensed store," *id.* § 350(A), and "[t]ribally owned or licensed stores may only purchase, receive, stock, possess, sell or distribute stamped cigarettes," *id.* § 350(B).

  B. State Complementary Act

Article 3C of the Oklahoma Tax Code, the State Complementary Act, was enacted in 2004 to "enhance[] the Prevention of Youth Access to Tobacco Act ["PYATA"] by preventing violations and aiding in the enforcement of the Master Settlement Agreement Complementary Act and thereby safeguard the Master Settlement Agreement, the fiscal soundness of the state, and the public health." Okla. Stat. tit. 68, § 360.2.[6] The State Complementary Act requires tobacco product manufacturers whose cigarettes are sold in Oklahoma to submit various certifications to the Oklahoma Attorney General ("OAG") and the Oklahoma Tax Commission ("OTC"), including a list of their "brand families." *See id.* § 360.4. The OAG uses the information obtained through the certification process to publish a directory on its website ("OAG Directory") listing all tobacco manufacturers and cigarette "brand families" that are in compliance with the State Complementary Act and the PYATA. (FAP ¶ 15.) Any cigarettes sold, offered for sale, or possessed for sale in Oklahoma or imported for personal consumption in Oklahoma in violation of the State Complementary Act are deemed "contraband" under the State Complementary Act and are subject to seizure and forfeiture.

---

  [6] The PYATA requires, *inter alia*, "[a]ny tobacco product manufacturer selling cigarettes to consumers within the state, whether directly or through a distributor, retailer or similar intermediary or intermediaries, after July 1, 1999," to either (1) "[b]ecome a participating manufacturer, as that term is defined in Section II(jj) of the Master Settlement Agreement, and generally perform its financial obligations under the Master Settlement Agreement;" or (2) place certain amounts into a qualified escrow fund. Okla. Stat. tit. 37, § 600.23(A)(1)-(2).

*See* Okla. Stat. tit. 68, § 360.7(B).  It is a misdemeanor to sell, distribute, acquire, hold, own, possess, transport, import, or cause to be imported cigarettes that the person knows or should know are intended for distribution or sale in Oklahoma "in violation" of the State Complementary Act. *Id.* § 360.7(E).

C.     CCTA

In relevant part, the CCTA makes it unlawful to "ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes," punishable up to five years imprisonment. 18 U.S.C. §§ 2342(a), 2344(a).  "Contraband cigarettes" are defined in the CCTA as "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes." *Id.* § 2341(2).[7]  In addition to criminal penalties, the CCTA contains a civil-enforcement provision, which authorizes a State to bring a civil action to "prevent and restrain violations" of the CCTA and to obtain "civil penalties, money damages, and injunctive or other equitable relief." *Id.* § 2346(b)(1), (2).  However, no civil action may be commenced by a State "against an Indian tribe or an Indian in Indian country." *Id.* § 2346(b)(1).

As to the CCTA's effect on state and local law, it provides that "[n]othing in this chapter shall be construed to affect the concurrent jurisdiction of a State or local government to enact and enforce its own cigarette tax laws." *Id.* § 2345(a).  Further, the civil enforcement provisions make

---

[7]  The definition contains four categories of excepted persons who may lawfully possess contraband cigarettes. *Id.* § 2341(2)(A)-(D). Indian tribes are not excepted from this definition. *See id.*; *see also City of New York v. Millhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 346 (E.D.N.Y. 2008) (explaining that "Native Americans are not among specifically-exempted categories of people").

clear that its remedies "are in addition to" any other remedies under state or local law. *Id.* § 2346(b)(3). As to the CCTA's effect on a state, local government, or Indian tribe's sovereign immunity from civil suit, the civil-enforcement provisions state that "[n]othing in [the CCTA] shall be deemed to abrogate or constitute a waiver of any sovereign immunity of a State or local government, or an Indian tribe against any unconsented lawsuit under this chapter, or otherwise to restrict, expand, or modify any sovereign immunity of a State or local government, or an Indian tribe." *Id.* § 2346(b)(1).

## II.     Allegations in First Amended Petition

The State of Oklahoma ("State") and OTC (collectively "Plaintiffs") filed this action in the District Court of Tulsa County, Oklahoma. Subsequently, Plaintiffs filed the FAP, which asserts a single cause of action for civil conspiracy against: (1) individual "owners" of certain smokeshops in Oklahoma ("Smokeshop Owners");[8] (2) individual "managers" of certain smokeshops in Oklahoma ("Smokeshop Managers");[9] (collectively "Smokeshop Owners/Managers"); (3) Toney Lee ("Lee"), in his official capacity as manager of Muscogee (Creek) Nation Tobacco Wholesale ("MCNT"); and (4) Michael Wisner ("Wisner"), in his official capacity as manager of Muscogee (Creek) Nation Travel Plaza Enterprises ("MCNTPE"). The Muscogee Creek Nation ("MCN")

---

[8] The FAP identifies the following Smokeshop Owners: (1) Coleta Larkin; (2) Steve Bruner; and (3) Emma Jean O'Hern ("O'Hern"). (FAP ¶¶ 1, 25, 29.) On July 1, 2009, Plaintiffs dismissed all claims against O'Hern with prejudice.

[9] The FAP identifies the following Smokeshop Managers: (1) Kay Evans; (2) Vicki Escoe; (3) Jess Harjochee; (4) Janelle Carr; (5) Gary Hudgens; (6) Anthony Henry; (7) Tom Givens; (8) Marie Lyons; (9) Karen Goodson; (10) Phyllis Noon; and (11) Scott and Ashley Carson.

itself is not a party to the lawsuit.  Nor are MCNT or MCNTPE, the tribal entities managed by Lee

and Wisner.

The FAP alleges that MCN is a non-compacting nation, (*see* FAP ¶ 8), and that MCNT is

not an Oklahoma-licensed cigarette wholesaler, (*see id.* ¶ 42).  The alleged civil conspiracy entered

into by Defendants is described at paragraph 42 of the FAP:

> [MCN] is a federally recognized Indian Tribe, resident in the State. [MCN] operates
> a wholesale cigarette distribution business, MCNT, and tribally owned cigarette
> retailers ("smokeshops").  [MCN] also issues licenses to non-tribally owned
> smokeshops to operate within its Indian Country.  All defendants, other than [Lee
> and Wisner], operate for-profit smoke shops which have nothing to do with the
> sovereign interests of [MCN].  All [MCN] licensed retailers, whether tribally owned
> or not, sell cigarettes primarily to non-tribal members. MCNT, which is not an
> Oklahoma licensed cigarette wholesaler, purchases *non-MSA compliant cigarettes,*
> *on which no Oklahoma cigarette excise tax is paid,* and solicits orders from and sells
> and distributes those cigarettes to [MCN] tribally owned and licensed retailers, and
> to retailers of other Native American Tribes and Nations.   MCNT purchases
> cigarettes at reduced State cigarette excise tax rates *lower than the State "non-*
> *compact" rate* required to be paid upon cigarettes sold to consumers within the
> Indian country of the [MCN], and solicits orders from and sells and distributes those
> cigarettes to [MCN] tribally owned and licensed retailers, and other Native American
> Tribes and Nations' retailers.

(emphases added); *see also id.* ¶ 49 (similar description of conspiracy).  The allegation is essentially

that MCNT, by and through Lee in his official capacity, conspired with other Defendants to facilitate

the purchase and sale of two types of cigarettes that are deemed "contraband" by Oklahoma law: (1)

"non-MSA compliant cigarettes,"[10] for which no Oklahoma tax was paid; and (2) cigarettes taxed

at something other than the non-compact rate that was applicable to MCN as a non-compacting

nation.  The alleged "object" of the conspiracy was to "produce unlawful profits and gain from the

---

[10]   As used in the FAP, "non-MSA compliant" refers to cigarettes that are in violation of
the State Complementary Act because they are cigarettes "of a tobacco product manufacturer or
brand family that is not listed in the [OAG Directory]."  (FAP ¶ 16.)  The FAP lists the following
relevant brands as non-MSA compliant: Seneca, King Mountain, and Skydancer.  (*Id.*)

sale of cigarettes in violation of the Federal CCTA, the State Complementary Act, and the State Cigarette Tax Act." (*Id.* ¶ 39.)

The "overt acts" taken in furtherance of the conspiracy include: (1) MCNT purchased 5,330,110 packs of cigarettes from Native Wholesale Supply ("NWS"), which were manufactured by Grand River Enterprises Six Nations ("GRE"), despite that GRE and its brand families were not listed on the OAG Directory, in "knowing violation of the Federal CCTA and the State Complementary Act. (*Id.* ¶ 43.)[11]  (2) MCNT offered these cigarettes for sale to smokeshops owned and licensed by MCN, and to smokeshops owned and licensed by other tribes and nations,[12] without payment of the necessary Oklahoma cigarette excise tax, in violation of the State Cigarette Tax Act. (*Id.* ¶ 44.) (3) Those smokeshops tribally owned and licensed by MCN acquired the "vast majority" of their cigarettes from wholesalers that are not Oklahoma-licensed wholesalers, in violation of the State Cigarette Tax Act. (*Id.* ¶ 45.) (4) Those smokeshops tribally owned and licensed by MCN acquired the "vast majority of cigarettes sold by them" either without payment of any Oklahoma excise tax or at a rate lower than the non-compacting rate applicable to licensees or owners of MCN

---

[11]  In August 2008, the State filed suit against NWS in state court, seeking to halt cigarette sales made by NWS in violation of the State Complementary Act.  NWS removed to the District Court for the Western District of Oklahoma, arguing that "complete preemption" permitted removal.  The case was remanded on grounds that no federal question was presented on the face of the petition and that "complete preemption" did not apply.  (*See* 10/16/08 Order, Doc. 30, *State of Okla. ex rel. W.A. Drew Edmondson v. Native Wholesale Supply*, 08-CV-818-D (W.D. Okla).)  On April 10, 2009, following remand to state court, the action was dismissed with prejudice on grounds that the petition "seeks relief that is barred by the Indian Commerce Clause."  (6/10/09 Journal Entry of Judgment, *State of Okla. ex rel. W.A. Drew Edmondson v. Native Wholesale Supply*, CJ-2008-4942.)

[12]  The FAP does not allege whether the smokeshops owned and/or managed by the Defendants, identified at paragraphs 19-31, are owned and licensed by MCN or owned and licensed by other Indian nations.

smokeshops. (*Id.* ¶ 46.) (5) Between December 2008 and January 2009, certain Defendant Smokeshop Owners/Managers offered for sale Seneca, King Mountain, and Skydancer brand cigarettes, all of which are non-MSA compliant. (*Id.* ¶ 47.) (6) Certain Defendant Smokeshop Owners/Managers offered for sale cigarettes that, although MSA-compliant, had affixed the "exception" rate stamp[13] rather than the "non-compact" rate stamp. (*Id.* ¶ 48.) (7) On October 15, 2008, OTC agents found and seized non-MSA compliant cigarettes and cigarettes containing an "exception" rate stamp at two smokeshops which "were considered subject to the State 'non-compact' rate." (*Id.* ¶ 50.) (8) On November 12, 2008, MCN held a "MCN Tobacco Forum," during which it promoted importation of non-MSA compliant cigarettes from manufacturers King Mountain and GRE and therefore "encouraged the actions of MCNT in importing non-MSA compliant product and selling and distributing it to [MCN] and other tribal retailers for sale to the public." (*Id.* ¶ 51.) (9) On December 9, 2008, the Oklahoma Highway Patrol ("OHP") intercepted a truck loaded with cigarettes bearing the "exception" rate tax stamps. The cigarettes were allegedly being delivered to MCNT. (*Id.* ¶ 52.)[14]

---

[13]  The exception rate, $0.0575 cents/pack of twenty cigarettes, applies only to certain compacting tribes. *See* Okla. Admin. Code 710:70-7-8(b)(6).

[14]  Subsequent to the filing of this lawsuit, in May 2009, OHP stopped MCN-owned trucks, and OTC seized certain tobacco products in the trucks. MCN filed suit in this Court against OTC and certain OTC commissioners ("Commissioners"), seeking a preliminary injunction restraining OTC from interfering with their trucks. OTC and Commissioners moved to dismiss on various grounds. After conducting an evidentiary hearing, this Court dismissed the action against OTC on grounds of state sovereign immunity and dismissed the action against Commissioners because MCN was not a "person" entitled to bring suit under 42 U.S.C. § 1983. (*See* 8/10/09 Order, Doc. 59, *Muscogee (Creek) Nation v. Oklahoma Tax Commission, et al.*, 09-CV-285-TCK-TLW.) MCN appealed, and the Court denied MCN's motion for injunction pending appeal. (*See* 11/19/09 Order, Doc. 68.)

Section VI of the FAP, entitled "Damages and Other Claims for Relief," is divided into relief sought by OTC and the State.  OTC seeks money damages from all Defendants in the following amounts of lost tax revenues: (1) $0.7725/pack for each pack of cigarettes sold by Defendants on which no Oklahoma cigarette excise tax was paid;[15] (2) $0.7150/pack for each pack of cigarettes sold bearing the "exception" rate stamp;[16] and (3) the difference between any other tax rate at which cigarettes were sold by Defendants and the non-compact rate.  OTC contends that Defendants are jointly and severally liable for all damages suffered in lost tax revenue as a direct result of the alleged conspiracy.  In addition, OTC seeks a "permanent, prohibitory injunction" prohibiting Lee and Wisner, in their official capacities as MCN managers, from violating the State Cigarette Tax Law by "shipping, transporting, receiving, possessing, selling, distributing, or purchasing of contraband cigarettes, which bear no evidence of the payment of the [non-compact rate]."  (FAP ¶ 53.)

The State seeks the following relief against all Defendants pursuant to the State Complementary Act:  (1) disgorgement of any profits, gains, gross receipts, or other benefit realized by Defendants from violations of the State Complementary Act for deposit into the Tobacco Settlement Endowment Trust Fund, *see* Okla. Stat. tit. 68, § 360.8(G); (2) a mandatory injunction requiring Defendants to surrender non-MSA compliant cigarettes to the State for destruction, *see id.* § 360.7(B); and (3) costs of investigation, expert witness fees, and attorney fees expended in the prosecution of this action, *see id.* § 360.8(F).  The State also seeks a "permanent, prohibitory

---

[15]  This is the difference between the amount paid ($0/pack) and the relevant non-compact rate ($0.7725/pack).

[16]  This is the difference between the exception rate ($0.0575 cents/pack) and the relevant non-compact rate ($0.7725/pack).

injunction" prohibiting Lee and Wisner from violating the State Complementary Act by "participating in the acquisition, holding, owning, possession, transport, import or causing to be imported into Oklahoma cigarettes which [Lee and Wisner] now [sic] or should know are of a tobacco product manufacturer or brand family not included in the [OAG Directory]."  (FAP ¶ 54.)

Defendants removed the case to this Court, asserting three grounds for removal: (1) 28 U.S.C. § 1331; (2) the "artful pleading doctrine"; and (3) 28 U.S.C. § 1441(c).  Plaintiffs moved to remand.  Smokeshop Owners, Lee, and Wisner filed a response, and Smokeshop Managers filed a separate response.[17]  Subsequently, all Defendants moved to dismiss.  Lee and Wisner filed a motion to dismiss, arguing that: (1) they are entitled to tribal sovereign immunity; and (2) MCN is an indispensable party that cannot be joined due to its tribal sovereign immunity.  Smokeshop Managers filed a motion to dismiss, arguing that: (1) the Oklahoma tax laws have no application to them because the laws are "are not effective in Indian country against tribal activity" and the laws "unduly burden Indian commerce;" (2) they are entitled to tribal sovereign immunity; and (3) MCN is an indispensable party that cannot be joined due to its tribal sovereign immunity.  Smokeshop Owners filed a motion to dismiss, arguing that: (1) they are entitled to tribal sovereign immunity; (2)  MCN is an indispensable party that cannot be joined due to its tribal sovereign immunity; and (3) Plaintiffs' allegations fail to state a claim for conspiracy against them.

_____

[17] Smokeshop Owners, Lee, and Wisner are represented by the same counsel.  All Smokeshop Managers are represented by the same counsel.

III.     **Removal Standard**

A civil action is removable only if the plaintiff could have originally brought the action in federal court. *See* 28 U.S.C. § 1441(a). Because federal courts are courts of limited jurisdiction, there is a presumption against federal jurisdiction. *See Basso v. Utah Power & Light, Co.*, 495 F.2d 906, 909 (10th Cir. 1974). As such, the Court strictly construes the removal statute and must resolve all doubts against removal. *See Fajen v. Found. Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982). In cases involving removal based on federal question jurisdiction, the removing party bears the burden of persuasion as to the existence of federal jurisdiction. *BIW Deceived v. Local S6, Indus. Union of Marine and Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, 132 F.3d 824, 831 (1st Cir. 1997); *see also Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) (holding that removing defendant bears burden of establishing that jurisdictional prerequisites are met).

IV.     **Federal Question - 28 U.S.C. § 1331**

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case arises under federal law if its well-pleaded complaint establishes either [1] that federal law creates the cause of action[,] or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (internal quotations omitted).

A.     <u>Parties' Arguments</u>

Defendants argue that federal-question jurisdiction exists because the FAP "alleges a conspiracy to violate a federal statute – the Federal CCTA – and accuses individual Defendants [Lee

and Wisner] of violating a federal statute." (Not. of Removal ¶ 22.)  In addition, Defendants argue

that Defendants' unnamed co-conspirator, MCNT, "was accused of purchasing, importing and

possessing cigarettes in knowing violation of the Federal CCTA." (*Id.*)  Plaintiffs contend that,

notwithstanding references to the CCTA in the FAP, their cause of action arises solely under state

law:

> [The FAP] alleges a conspiracy to violate ***only*** the Oklahoma Tax Code and the
> MSACA,[18] ***both state laws***.  Moreover, Plaintiffs are seeking to recover the damages
> incurred under the Oklahoma Tax Code and the MSACA - both state laws.
> Additionally, the injunction sought by Plaintiffs is an injunction prohibiting
> Defendants Lee and Wisner from taking actions that violate the Oklahoma Tax Code
> and the MSACA – ***both state laws***.  The only reference to the Federal CCTA
> contained in the [FAP] is to demonstrate that the actions of Defendants Lee and
> Wisner, acting in their official capacities, exceeded the statutory authority that
> [MCN] could legally bestow upon them.  Plaintiffs' claims are not based upon, nor
> are they seeking any relief, pursuant to the Federal CCTA. . . . In this case, Plaintiffs
> have chosen to rely on state remedies provided by the Oklahoma Tax Code and the
> MSACA, not the remedies provided by the Federal CCTA.  The Court should not
> ignore the Plaintiffs' choice of state law as the basis for the action.

(Mot. to Remand 4-5) (internal citations omitted) (footnote added).  Defendants argue in response

that Plaintiffs have "mischaracterize[d]" their own pleadings by "fail[ing] to acknowledge that they

allege that Defendants conspired to violate the Federal CCTA."  (Lee, Wisner, and Smokeshop

Owners' Resp. to Mot. to Remand 2-3.)  Defendants further argue that the CCTA is "the lynch-pin

for the conspiracy claim that allegedly opens the doors to the coffers of [MCN] and trumps tribal

sovereign immunity."  (Smokeshop Managers' Resp. to Mot. to Remand 2.)

---

[18]  In the Motion to Remand, Plaintiffs referred to the State Complementary Act as the
MSACA.

B.    Does Federal Law Create Plaintiffs' Cause of Action?

The CCTA is referenced in five paragraphs of the FAP.  (*See* FAP ¶¶ 11, 33, 34, 39, 43.)[19]
 However, the FAP does not assert any "cause of action" under the CCTA.  Instead, the only cause
of action alleged is civil conspiracy, which is a claim created by Oklahoma common law.  *See*
*generally Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997) (setting forth elements of civil
conspiracy claim under Oklahoma law).  Therefore, although cited in the FAP, the CCTA cannot
be said to "create" Plaintiffs' alleged cause of action for civil conspiracy.  *See Grable & Sons Metal*
*Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (explaining that the most common
type of federal question jurisdiction is conferred when a plaintiff "plead[s] a cause of action created
by federal law (*e.g.*, claims under 42 U.S.C. § 1983)").

C.    Does Plaintiffs' Right to Relief Under State Law Necessarily Depend on Resolution
      of a Substantial Question of Federal Law?

The next question is whether the Court may exercise federal jurisdiction based on the
existence of "federal issues embedded" within the state-law conspiracy claim.  *See Grable & Sons*
*Metal Products, Inc.*,  545 U.S. at 314; *see also Nicodemus*,  440 F.3d at 1232 (explaining that "even
though a plaintiff asserts only claims under state law, federal-question jurisdiction may be
appropriate if the state-law claims implicate significant federal issues").  The doctrine of substantial
federal-question jurisdiction is meant to "capture[] the commonsense notion that a federal court
ought to be able to hear claims recognized under state law that nonetheless turn on substantial
questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity

---

[19]  Paragraph 11 is a general description of the CCTA contained in the "Regulatory
Background" section.  The other paragraphs citing the CCTA are discussed in detail below.

that a federal forum offers on federal issues." *Grable & Sons Metal Products, Inc.*, 545 U.S. at 313. The ultimate question, as most recently posed by the Supreme Court, is "does a state-law claim *necessarily* raise a stated federal issue, actually disputed and *substantial*, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 1314 (emphasis added).

"[S]everal principles have developed that guide federal courts in determining whether they have jurisdiction over a state-law claim." *Nicodemus*, 440 F.3d at 1232. These principles are grounded in the "well-pleaded complaint rule." *Id.* Pursuant to the well-pleaded complaint rule: (1) the federal question giving rise to jurisdiction must appear on the face of the complaint; (2) the plaintiff is the master of the claim and may avoid federal jurisdiction by exclusive reliance on state law; (3) federal-question jurisdiction may not be predicated on a defense that raises federal issues; (4) a plaintiff's anticipation of a defense based on federal law is not enough to make the case arise under federal law; and (5) a plaintiff may not circumvent federal jurisdiction by omitting federal issues that are essential to his claim. *See id.*[20] The only exception to the well-pleaded complaint rule is the doctrine of "complete preemption," which applies when Congress "so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 1232 n.4 (internal quotations omitted).[21]

---

[20] The fifth principle is commonly known as the "artful pleading doctrine." *See generally Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1060-61 (10th Cir. 2006).

[21] Defendants have not argued that the CCTA or any other federal law completely preempts the state-law claim asserted here. Indeed, the CCTA disclaims any preemptive effect over state law. *See* 18 U.S.C. §§ 2345(a), 2346(b)(3).

Even if a federal question appears on the face of a well-pleaded complaint, jurisdiction is not automatic. *Id.* Instead, the federal question necessarily presented by the state-law claim must be "substantial." *Id.*; *see also Grable & Sons Metal Products, Inc.,* 545 U.S. at 314 (explaining that the presence of a federal issue is not "a password opening federal courts to any state action embracing a point of federal law"). The Supreme Court refused to set forth a "single, precise, all-embracing test" but has indicated that a "substantial" federal question is one "indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Products, Inc.*, 545 U.S. at 314. If a "substantial" federal question is necessarily presented, a district court still has discretion to "veto" the exercise of jurisdiction if "federal jurisdiction is inconsistent with congressional judgment about the sound division of labor between state and federal courts." *Id.*; *see also Nicodemus*, 440 F.3d at 1232.

1.      Use of CCTA to Avoid Lee and Wisner's Sovereign Immunity Defense (Paragraphs 33 and 34 of FAP)

As explained above, Plaintiffs admit that the FAP alleges that Lee and Wisner acted in violation of the CCTA. Plaintiffs contend, however, that such allegation is for the limited purpose of defeating Lee and Wisner's anticipated tribal sovereign immunity defense. (*See* Mot. to Remand 4.) The portions of the FAP relevant to this admitted use of the CCTA are paragraphs 33 and 34, which allege that Lee and Wisner:

> acted and continue[] to act *beyond the scope of authority the [MCN] is authorized to bestow as a matter of federal law* by authorizing and directing [MCNT and MCNTPE] to receive, possess, sell, distribute, and/or purchase in excess of 10,000 cigarettes, which are contraband pursuant to the State Complementary Act and State Cigarette Tax Act, for sale to the general public, which contraband cigarettes do not bear the applicable State tax stamps, *in violation of the Federal CCTA*, the State Complementary Act and the State Cigarette Tax Act.

(emphases added).

17

It is well settled that assertion of tribal sovereign immunity as a defense to a state-law claim does not create federal-question jurisdiction. *State of Okla. ex rel. Okla. Tax Comm'n v. Wyandotte Tribe of Okla.*, 919 F.2d 1449, 1450-51 (10th Cir. 1990) (reversing district court's denial of motion to remand) (rejecting tribe's argument that all taxation of Indians is "completely preempted" by federal law and concluding that sovereign immunity defense did not create a substantial federal question). The different circumstance presented here, which requires additional analysis, is that Plaintiffs pled a federal-law violation in an attempt to avoid application of Lee and Wisner's anticipated immunity defense. Thus, unlike in *Wyandotte Tribe*, Plaintiffs' allegations are not silent as to the federal defense but instead allege violation of a federal statute to avoid the federal defense.

The Court finds that references to the CCTA in paragraphs 33 and 34 of the FAP are insufficient to confer federal jurisdiction. The references appear in a section of the FAP entitled "Parties" and are not contained in the substantive claims against Defendants. These paragraphs do not assert any claim against Lee and Wisner arising under the CCTA; they merely allege that Lee and Wisner acted beyond the scope of their authority as tribal officials by violating a federal law. Plaintiffs' reliance upon the CCTA, as alleged in paragraphs 33 and 34, becomes relevant only if and when Lee and Wisner actually assert the defense of tribal sovereign immunity to the state-law claim.[22] The "well-pleaded complaint rule" and its attending principles prevent the Court's exercise of jurisdiction based on references to federal issues raised in anticipation of a federal immunity

---

[22] At this stage of the litigation, Lee and Wisner have indeed raised tribal sovereign immunity, and Plaintiffs have relied upon violations of the CCTA as means of avoiding immunity. (*See* Resp. to Lee and Wisner's Mot. to Dismiss 6-10.) Thus, it is no longer a hypothetical issue. However, under the well-pleaded complaint rule, a case may not be removed on the basis of federal issues relevant to a defense "even if both parties admit that the [federal] defense is the only question truly at issue in the case." *Franchise Tax Bd. of the State of Calif.*, 463 U.S. at 14.

defense.  *See Nicodemus*, 440 F.3d at 1232 (explaining that "federal-question jurisdiction may not

be predicated on a defense that raises federal issues" and that a plaintiff's "anticipation" of a federal

defense is "not enough" to make the case arise under federal law); *see also Aetna Health Inc. v.

Davila*, 542 U.S. 200, 207 (2004) (explaining that whether case arises under federal law "must be

determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or

declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought

the defendant may interpose") (internal quotations omitted); *Franchise Tax Bd. of the State of Calif.

v. Constr. Laborers Vacation Trust for S. Calif.*, 463 U.S. 1, 13-14 (1983) (explaining that, if

"federal law becomes relevant only by way of a defense to an obligation created entirely by state

law" the well-pleaded complaint rule prevents the exercise of federal-question jurisdiction and that

this is true "even if the defense is anticipated" in the plaintiff's complaint); *Pinney v. Nokia, Inc.*,

402 F.3d 430, 446 (4th Cir. 2005) (reversing district court's finding of federal-question jurisdiction

where federal regulation became relevant only in relation to a federal preemption defense).

2.    Violation of CCTA as Underlying Unlawful Act of Conspiracy
(Paragraphs 39 and 43 of FAP)

A civil-conspiracy claim under Oklahoma law requires "underlying unlawful act[s]."  *See

Brock*, 948 P.2d at 294 n.67 (stating that an "underlying unlawful act is necessary to prevail on a

civil conspiracy claim"); *Roberson v. PaineWebber, Inc.*, 998 P.2d 193, 201 (Okla. Civ. App. 1999)

("To be liable the conspirators must pursue an independently unlawful purpose or use an

independently unlawful means.  A conspiracy between two or more persons to injure another is not

enough; an underlying unlawful act is necessary to prevail on a civil conspiracy claim.").  As

explained above, Plaintiffs deny alleging violation of the CCTA as "an underlying unlawful act" of

the conspiracy.  Defendants argue that such denial is belied by the plain language of the FAP, citing

19

allegations in the "conspiracy" sections of the FAP that reference the CCTA.  (*See* FAP ¶ 39 ("The object of the conspiracy was to produce unlawful profits and gain from the sale of cigarettes in violation of the Federal CCTA, the State Complementary Act and the State Cigarette Tax Act."); ¶ 43 (alleging that non-party MCNT committed an "overt act" in furtherance of the conspiracy by purchasing, importing, and possessing over 5,000,000 packs of non-MSA compliant cigarettes, "in knowing violation of the Federal CCTA and the State Complementary Act").)

The Court need not resolve this conflict in characterizing the FAP because, even assuming a CCTA violation is alleged as an underlying unlawful act of the conspiracy, such allegation is insufficient to confer federal jurisdiction in this case.  As a general rule, "[i]f a plaintiff can establish, without the resolution of an issue of federal law, all of the essential elements of his state law claim, then the claim does not necessarily depend on a question of federal law." *Pinney,* 402 F.3d at 442.  More specific to this case, where a plaintiff alleges both state and federal law violations as "underlying unlawful acts" of a civil conspiracy claim, the claim does not create federal-question jurisdiction because the federal violation is not essential to recovery.  *See Richard v. Fleetwood Enter., Inc.*, 4 F. Supp. 2d 650, 655-56 (E.D. Tex. 1998) (complaint alleged conspiracy to violate federal law in "facts" section of the complaint) (holding that state-law conspiracy claim did not create federal-question jurisdiction because the plaintiffs "alleged numerous state grounds for the conspiracy," and "the violation of the federal statute was merely a factor in the civil conspiracy cause of action") ("A violation of the federal statute was neither the sole basis for the alleged conspiracy claim, nor an important one."); *Baldwin v. Pirelli Armstrong Tire Corp.*, 927 F. Supp. 1046, 1053-54 (M.D. Tenn. 1996) (complaint alleged that defendants conspired to cause the termination of plaintiffs' employment  "in violation of Tennessee and federal law") (holding that

state-law civil conspiracy claim did not create federal-question jurisdiction because the plaintiffs also alleged an underlying violation of state law; federal law was therefore not a "necessary element" of the civil conspiracy claim). *Cf. Gaming Corp. of Am. v. Dorsey*, 88 F.3d 536, 551 (8th Cir. 1996) (reversing district court's remand of civil conspiracy claim) (holding that civil conspiracy claim alleging conspiracy to violate Indian Civil Rights Act arose under federal law because federal law violation was the "sole basis" for the alleged conspiracy).

In this case, even assuming the FAP alleges violation of the CCTA as one underlying unlawful act of the conspiracy, the FAP also alleges underlying violations of two state laws – the State Cigarette Tax Act and the State Complementary Act.  Neither the State Cigarette Tax Act nor the State Complementary Act depend on or even reference the CCTA, and the state laws function entirely independently of the CCTA.  The relevant state laws contain their own definitions of "contraband" cigarettes.  *See* Okla. Stat. tit. 68, §§ 348(7); 360.7(B).  Although the CCTA also contains a definition of "contraband" cigarettes, *see* 18 U.S.C. § 2341(2), it is not necessary to refer to the federal definition or any other aspect of the federal law to determine if there has been a state-law violation.  Therefore, Plaintiffs' right to relief on the conspiracy claim does not "necessarily" depend on resolution of any federal question presented by the CCTA.  Instead, Plaintiffs may succeed on the conspiracy claim without proving any CCTA violations and without referring to any federal standards or definitions contained therein.  Therefore, this is not a case like *Dorsey*, *supra*, where the federal-law violation was the "sole basis" for the alleged state-law conspiracy, such that resolution of the federal issue became an essential element of the claim.  *See Dorsey*, 88 F.3d at 551 (reasoning that, when the only alleged "underlying unlawful acts" of a state-law conspiracy are violations of federal law, "federal law is the only measure of whether [a defendant] conspired to

commit an unlawful act"); *see also Grable & Sons Metal Products, Inc.*, 545 U.S. at 315 (holding that exercise of federal jurisdiction over state-law quiet-title claim was proper because issue of whether plaintiff was given notice, within meaning of federal law, was an "essential element" of the state-law claim).

Not only is the potentially alleged CCTA violation unessential to Plaintiffs' conspiracy claim, it is relatively unimportant to the analysis. The CCTA's definition of "contraband" cigarettes is directly tied to violations of state tax law, *i.e.*, a state-law violation is an essential element of a federal-law violation, s*ee* 18 U.S.C. § 2341(2); § 2342(a); *Millhelm Attea & Bros., Inc.*, 550 F. Supp. 2d at 346 (explaining that "[a] violation of a state or local cigarette tax law, therefore, is a prerequisite to a CCTA violation; the state or local government must 'require' a stamp to be placed on cigarette packages as evidence of payment of an applicable tax"). This type of relationship between state and federal law – where federal law defers to state-law standards for determining whether a violation has occurred – seems to lessen any "advantages thought to be inherent in a federal forum." *See Grable & Sons Metal Products, Inc.*, 545 U.S. at 314 (reasoning that federal jurisdiction was appropriate because the "meaning of the federal tax provision is an important issue of federal law that sensibly belongs in federal court"). This is certainly not a case in which the "gravamen" of the alleged conspiracy is violation of federal law or standards. *See, e.g., D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 101 (2nd Cir. 2001) (exercising federal-question jurisdiction over state-law conspiracy claim where the "gravamen" of the claim was that defendants "conspired to violate the federal securities laws" and failed to perform federal statutory duties). In this case, the "gravamen" of the alleged conspiracy is Defendants' attempt to avoid Oklahoma cigarette tax law and earn higher profits from cigarette sales. Resolution of whether any non-

22

immune Defendants committed any "underlying unlawful acts" in furtherance of the conspiracy will turn, in the first instance, exclusively on Oklahoma law.  Only if an Oklahoma-law violation has occurred will the CCTA come into play as an additional "underlying unlawful act" of the conspiracy.  In this situation, the Court cannot conclude that any federal issues presented by the FAP are necessary or substantial.  Accordingly, assuming without deciding for purposes of this Motion to Remand that the FAP alleges violation of the CCTA as one underlying unlawful act of the conspiracy claim, such allegation is insufficient to create federal-question jurisdiction in this case.[23]

> D.    Have Plaintiffs Omitted Any Essential Federal Issues?

Under the artful pleading doctrine, "a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim." *Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1060-61 (10th Cir. 2006) (internal quotations omitted); *see also Nicodemus*, 440 F.3d at 1232 (explaining that "a plaintiff may not circumvent federal jurisdiction by omitting federal issues that are essential to his claim").  "The doctrine empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors, and to act accordingly." *See BIW Deceived*, 132 F.3d at 831.

Defendants argue that, although Plaintiffs did not expressly invoke the CCTA as a cause of action, Plaintiffs requested "remedies that are identical with remedies afforded by federal law." (*See*

---

[23]  The Court has held that Plaintiffs' right to relief does not necessarily depend on any substantial question of federal law because the CCTA is merely pled (1) in anticipation of a federal defense, and possibly (2) as one underlying unlawful act of what is essentially a conspiracy to violate state tax laws.  The Court therefore does not reach the remaining hurdle of whether the Court could exercise federal jurisdiction without disturbing any "congressionally approved balance of federal and state judicial responsibilities." *See Nicodemus*, 440 F.3d at 1233.

Lee, Wisner, and Smokeshop Owners' Am. Br. in Resp. to Mot. to Remand 6-7.)  Defendants seem to be arguing that, although Plaintiffs pled only a state-law conspiracy claim, the Court should exercise federal-question jurisdiction based on the wording of and relief requested in the prayers for relief.[24]

First, Plaintiffs' prayers for relief do not, as argued by Defendants, demonstrate that Plaintiffs' case actually arises under the CCTA rather than state law.  With respect to relief sought by OTC, it seeks lost tax revenue, which is recoverable pursuant to state tax law.  OTC also seeks an injunction prohibiting Lee and Wisner from violating the State Cigarette Tax Law by "shipping, transporting, receiving, possessing, selling, distributing, or purchasing of contraband cigarettes, which bear no evidence of the payment of the [non-compact rate]."  (FAP ¶ 53.)  It is true that this list of prohibited actions tracks the language of the CCTA.  *See* 18 U.S.C. § 2342(a) ("It shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute or purchase contraband cigarettes or contraband smokeless tobacco.").  However, the list also tracks then-existing § 349 of the State Cigarette Tax Act.  *See* Okla. Stat. tit. 68, § 349(D) ("It shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute or purchase contraband cigarettes.").  Thus, this wording does not indicate any disguised attempt to invoke the CCTA.[25]

---

[24] Defendants also argue that "Plaintiffs have alleged violations of federal law" in support of their artful-pleading argument.  (*See* Lee, Wisner, and Smokeshop Owners' Am. Br. in Resp. to Mot. to Remand 6.)   The Court has already addressed the CCTA-related allegations actually contained in the FAP, and these allegations will not be discussed again in relation to the artful-pleading doctrine.

[25] The repeal of § 349 of the State Cigarette Tax Act may impact OTC's request for prohibitory relief in this case.  However, the request has not been dismissed, and the Court fully considered such request in determining whether federal jurisdiction exists.

With respect to relief sought by the State pursuant to the State Complementary Act, such as disgorgement of profits, a mandatory injunction requiring surrender of non-MSA compliant cigarettes, costs of investigation, and attorney fees, all requests are specifically provided by state law. *See* Okla. Stat. tit. 68, § 360.7(B); 360.8(G), (F). The State also seeks an injunction prohibiting Lee and Wisner from violating the State Complementary Act by "participating in the acquisition, holding, owning, possession, transport, import or causing to be imported into Oklahoma cigarettes which [Lee and Wisner] now [sic] or should know are of a tobacco product manufacturer or brand family not included in the [OAG Directory]." (FAP ¶ 54.) This language tracks only the relevant state law. *See* Okla. Stat. tit. 68, § 360.7(E)(1)(b) ("It shall be unlawful for a person to: . . . acquire, hold, own, possess, transport, import, or cause to be imported cigarettes that the person knows or should know are intended for distribution or sale in the state in violation of the [State Complementary Act]."). Therefore, the Court rejects Defendants' argument that Plaintiffs' claims necessarily arise under the CCTA based on language contained in Plaintiffs' respective prayers for relief.

Second, the Court finds no "artful pleading" by Plaintiffs simply because the injunctive relief requested by Plaintiffs against Lee and Wisner is authorized by the CCTA. Defendants have given the Court no indication that such injunctive relief is prohibited by or not otherwise available under state law. In any event, Plaintiffs are the master of their claims and have the right to exclusively pursue state-law remedies, even if federal remedies are also available. *See Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008) ("[A] plaintiff is master of his complaint and may generally allege only a state law cause of action even where a federal remedy is available."). If any relief requested in the FAP is not available under state law, it simply will not be awarded.

25

## V.      Separate and Independent Claim - 28 U.S.C. § 1441(c)

Finally, Defendants contend that Plaintiffs have asserted "separate and independent" claims against Lee and Wisner that arise under federal law, such that removal of the entire case is proper. *See* 28 U.S.C. § 1441(c) ("Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates."). Defendants' argument is based on the premise that substantive CCTA claims are asserted against Lee and Wisner, either based on the FAP itself or on the artful pleading doctrine. For reasons explained *supra* Part V, the Court rejects this premise. Although the CCTA alleges in paragraphs 33 and 34 that Lee and Wisner committed CCTA violations, these allegations are pled in anticipation of the tribal sovereign immunity defense. Further, the Court is not persuaded that anything contained in the prayers for relief against Lee and Wisner require "recasting" of the claims as CCTA claims. Therefore, there is no "claim or cause of action within the jurisdiction conferred by section 1331" to which any non-removable claims could potentially attach.

The Motion to Remand (Doc. 26) is GRANTED, and the Court Clerk is directed to remand the case to the District Court for Tulsa County, Oklahoma.

**SO ORDERED this 14th day of April, 2010.**

**TERENCE KERN**
**United States District Judge**

26